UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

EASHWAR ASHMID and BESHAM STANDISH,   INDEX NO. 16-4276

                    PLAINTIFFS,   Jury Trial Demanded

   vs.

                                    COMPLAINT

THE CITY OF NEW YORK, NYPD PO KENNETH
DOUGLASS, NYPD PO BACHAL, and "John Doe"
Police Officers 1-15,

                    DEFENDANTS.
_____

Plaintiffs EASHWAR ASHMID and BESHAM STANDISH, by their attorney, Wylie Stecklow of Stecklow & Thompson, complaining of the defendants, respectfully allege as follows:

## I.    PRELIMINARY STATEMENT

1. This is a civil rights action in which the plaintiffs seek relief for the violation of their rights secured by 42 U.S.C. § 1983 and 42 U.S.C. § 1988, the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Plaintiffs EASHWAR ASHMID and BESHAM STANDISH bring this action for compensatory damages, punitive damages and attorney's fees for violations of their civil rights, as said rights are secured by said statutes and the Constitutions of the United States. In addition to compensatory and punitive damages, both plaintiffs seek the award of statutory attorneys fees, expenses, and costs.

2. On August 11, 2013, at or around 10:00pm, Plaintiffs were celebrating their cricket match victory from earlier that day at 101-56 104th Street, Queens, New York, when Defendant NYPD PO DOUGLASS ("DEFENDANT DOUGLASS") along

1

with NYPD PO BACHAL and NYPD JOHN DOE DEFENDANTS, approached Plaintiff Eashwar Ashmid ("Mr. Ashmid") who asked the officers why they were at this location and whether they had a warrant to enter the home and private space beyond the sidewalk where they were all standing.  DEFENDANT DOUGLASS then grabbed Mr. Ashmid and placed him in a chokehold.  Over the course of the next few minutes, DEFENDANT DOUGLASS assaulted Mr. Ashmid and his girlfriend, both in the front yard and also in the garage area.  This assault continued after Mr. Ashmid was placed in handcuffs.  Eventually, Mr. Ashmid was brought to the sidewalk in front of 101-56 104th Street by DEFENDANT DOUGLASS and DEFENDANT JOHN DOE OFFICERS.  Plaintiff Besham Standish ("Mr. Standish") was on the sidewalk while talking on the phone with Mr. Ashmid's mother (who is also Mr. Standish' mother).  DEFENDANTS threatened to arrest Mr. Standish if he didn't hang up the call immediately.  When Mr. Standish simply walked away and continued the conversation with his mother, he was placed under arrest.  Mr. Standish was released with a summons from the precinct.  Mr. Ashmid was processed overnight and arraigned.  He was also taken to the hospital for treatment related to the injuries suffered at the hands of DEFENDANTS DOUGLASS, BACHAL and JOHN DOE DEFENDANTS.

      3.    At the time of these arrests neither Mr. Ashmid nor Mr. Standish had any outstanding warrants.  Both of their cases were eventually dismissed.

## II.     JURISDICTION

      4.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments Fourth and Fourteenth

Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) and the aforementioned statutory and constitutional provisions.

5. Plaintiffs EASHWAR ASHMID and BESHAM STANDISH further invoke this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all state law claims and causes of action.

### III.  VENUE

6. Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this district

### IV.  JURY DEMAND

7. Plaintiffs EASHWAR ASHMID and BESHAM STANDISH, respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

### V.  THE PARTIES

8. Plaintiff EASHWAR ASHMID is a resident of the State of New York.

9. Plaintiffs BESHAM STANDISH is a resident of the State of New York.

10. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

11. Defendant THE CITY OF NEW YORK maintains the New York City Police Department ("NYPD").

12. Defendant NEW YORK CITY POLICE OFFICER KENNETH DOUGLASS, is an officer of the NYPD, acting within the scope of his employment.

13. Defendant NEW YORK CITY POLICE OFFICER BACHAL, is an officer of the NYPD, acting within the scope of his employment.

14. At all times hereinafter mentioned, Defendant "John Doe" POLICE OFFICERS 1-15 ("The Defendant POLICE OFFICERS") were duly sworn police officers of the New York City Police Department and were acting under the supervision of said department and within the scope of their employment their.

15. Plaintiffs EASHWAR ASHMID and BESHAM STANDISH sue the Defendant POLICE OFFICERS in both their official and individual capacities.

16. Plaintiffs EASHWAR ASHMID and BESHAM STANDISH will amend this complaint to name the Defendant "John Doe" POLICE OFFICERS as their identities can be established to a reasonable certainty.

17. At all times relevant to this action, the defendants were acting under color of state law.

18. The acts complained of were carried out by the aforementioned individual Defendant POLICE OFFICERS in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

19. Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting within the scope and in furtherance of their employment by Defendant THE CITY OF NEW YORK.

## VI.   FACTS COMMON TO ALL CLAIMS

20. On the date of incident, Plaintiff s EASHWAR ASHMID and BESHAM STANDISH (half-brothers) were members of a cricket team named LesBeholden.

21. On August 11, 2013, LesBeholden had just won a cricket match and members of the team, including the plaintiffs, had driven to the home of the captain of the cricket team to celebrate the victory.

22. As Mr. Ashmid and his girlfriend were waiting on the grass in front of this private home for a taxi to take them home, members of the NYPD, including individual defendants DOUGLASS and BACHAL, approached plaintiff Ashmid.

23. Defendants DOUGLASS and BACHAL, sought to enter the private area of this address and inquired to Mr. Ashmid.

24. Mr. Ashmid asked if DEFENDANT DOUGLASS had a warrant to enter the property.

25. DEFENDANT DOUGLASS answered by hitting Mr. Ashmid with his baton on the left side of his head near his left ear.

26. DEFENDANT DOUGLASS then began to further assault Mr. Ashmid and placed him in a choke-hold.

27. DEFENDANT DOUGLASS eventually took Mr. Ashmid to the ground while DEFEDANT BACHAL assisted.  While Mr. Ashmid was on the ground, DEFENDANT DOUGLASS put his knee on Mr. Ashmid's back and placed handcuffs on him.

28. Mr. Ashmid was then brought to his feet and pushed into the garage where DEFENDANT DOUGLASS punched him in the face multiple times.

29. DEFENDANT DOUGLASS then placed leather gloves on his hands and begins to choke Mr. Ashmid.

30. DEFENDANT DOUGLASS then instructed DEFENDANT BACHAL to arrest Mr. Ashmid's girlfriend.

31. DEFENDANT BACHAL complied with this instruction and placed handcuffs on Mr. Ashmid's girlfriend.

32. When Mr. Ashmid verbally objected to the arrest of his girlfriend, DEFENDANT DOUGLASS retaliated for this exercise of free speech by Plaintiff ASMID by pepper spraying Mr. Ashmid and punching him in the face multiple times until Mr. Ashmid dropped to the ground.

33. Mr. Ashmid's girlfriend was then taken to the front of the house and placed with excessive force into the back of an NYPD vehicle.

34. After an ambulance arrived on scene, Mr. Ashmid was placed on a stretcher and taken to the ambulance.  DEFENDANTS handcuffed Mr. Ashmid to the stretcher.

35. When Mr. Ashmid was being brought out from the private area of the property to the sidewalk area on a stretcher, Mr. Standish was on a phone call in front of the home at 101-56 104th Street.  Plaintiff Standish requested that a friend who was nearby use their phone to videotape Mr. Ashmid being placed in the ambulance.

36. DEFENDANT DOUGLASS retaliated for this exercise of free speech by Plaintiff Standish initially by stating to Mr. Standish in sum and substance, 'if you say one more word, I am going to arrest you.' Mr. Standish verbally responded that he was on the phone with his mother.

37. DEFENDANT DOUGLASS retaliated for this exercise of free speech by Mr. Standish by slapping the phone out of the hand of plaintiff Standish causing the call

to end and the screen to crack.  DEFENDANT DOUGLASS further retaliated for this exercise of free speech by taking handcuffs from a JOHN DOE DEFENDANT, placing them on plaintiff Standish and arresting him.

38. Plaintiff Ashmid was transferred to the hospital and then to the precinct before going through central booking and being arraigned and released on his own recognizance.

39. Plaintiff Ashmid was held in custody for approximately 24 hours.

40. Plaintiff Ashmid was forced to return to court on a number of occasions before the case is dismissed.

41. Plaintiff Standish was brought to the 102nd precinct and issued a summons by DEFENDANT DOUGLASS for a violation of disorderly conduct, 240.20(3).

42. Plaintiff Standish's arrest was a violation of the NYPD's agreement to be bound by the Federal Consent decree in <u>Black v. Codd</u>, 73 Civ. 5283 (JNC), that is also incorporated in the NYPD patrol guide.

43. When Plaintiff Standish appeared in court on October 24, 2013 for the summons, he was informed that the summons was dismissed, *sua sponte,* by the court on October 1, 2013 as it was legally insufficient.

44. Plaintiff Standish was subjected to battery by Defendant POLICE OFFICERS.

45. Plaintiff Ashmid was subjected to assault and battery by Defendant POLICE OFFICERS.

46. As a result, Plaintiff Ashmid has suffered injuries that continue to this date including facial scarring.

47. Plaintiff Ashmid's face was injured requiring multiple hospital treatments.

48. Plaintiff Ashmid's nose was injured, requiring multiple hospital treatments.

49. Mr. Ashmid suffered lacerations to his chin and left eyebrow that required approximately ten stitches.

50. Plaintiffs' arrests were each without a warrant and without probable cause.

51. Plaintiffs were each conscious of their confinement and did not consent to it.

52. Each plaintiff was chilled due to the unlawful conduct of the police defendants.

53. Plaintiff Standish was unable to finish the phone call he was on at the time.

54. Plaintiff Ashmid was processed overnight and was unable to attend to the arrest of his girlfriend.

55. Each plaintiff was thereafter chilled in their communications with police, each having fear of interactions with NYPD due to the conduct of the NYPD on the incident date.

56. DEFENDANT DOUGLASS submitted false information to the District Attorney regarding the conduct of Plaintiff Ashmid.

57. Among the false statements made by DEFENDANT DOUGLASS included that Plaintiff Ashmid repeatedly stepped in front of DEFENDANT DOUGLASS, blocked DEFENDANT DOUGLAS' path, and that Plaintiff Ashmid bumped DEFENDANT DOUGLASS in the chest.

58. This was not true.

59. DEFENDANT DOUGLASS submitted false information to the District Attorney regarding the conduct of Plaintiff Standish.

60. Among the false statements made by DEFENDANT DOUGLASS included that Plaintiff Standish committed disorderly conduct.

61. All charges against Plaintiff. Ashmid were ultimately dismissed.

62. Throughout the foregoing assault and arrests of Plaintiff Ashmid and Plaintiff Standish, Defendant John Does 1-15 and BACHAL all witnessed the unlawful conduct of DEFENDANT DOUGLASS and the other officers, and each had the opportunity and obligation to intervene or intercede, and failed to do so.

63. As a result of the Defendants' constitutionally impermissible conduct, Plaintiffs EASHWAR ASHMID and BESHAM STANDISH were caused to suffer personal injuries, violations of their civil rights, mental and emotional distress, and loss of liberty.

64. Plaintiffs EASHWAR ASHMID and BESHAM STANDISH demand judgment against the defendants in a sum to be determined by the jury at trial.

## VII. CLAIMS FOR RELIEF

<u>FIRST CLAIM</u>
<u>DEPRIVATION OF PLAINTIFFS'</u>
<u>CIVIL RIGHTS</u>

65. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

66. All of the aforementioned acts of Defendant THE CITY OF NEW YORK and the Defendant POLICE OFFICERS were carried out under the color of state law.

67. All of the foregoing acts by Defendants deprived Plaintiffs of federally protected rights, including, but not limited to, the right:

    a.    To freedom from seizure and arrest not based upon probable cause;
    b.    To freedom from being subjected to false criminal charges by the police;
    c.    To freedom from excessive force being used upon them; and
    d.    To freedom from retaliatory prosecution.

68. All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

69. As a result of the Defendants' constitutionally impermissible conduct, Plaintiffs EASHWAR ASHMID and BESHAM STANDISH were caused to suffer personal injuries, violations of their civil rights, mental and emotional distress, and loss of liberty.

70. Plaintiffs EASHWAR ASHMID and BESHAM STANDISH demand judgment against the defendants in a sum to be determined by the jury at trial.

## SECOND CLAIM
## FALSE ARREST

71. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

72. Plaintiffs were subjected to false arrest by the Defendant THE CITY OF NEW YORK and the DEFENDANT Police Officers on August 11, 2013.

73. Plaintiffs' liberty was restricted for an extended period of time, Plaintiffs were put in fear for their safety, and Plaintiffs were caused to suffer embarrassment and humiliation, without probable cause.

74. As a result of the Defendants' constitutionally impermissible conduct, Plaintiffs EASHWAR ASHMID and BESHAM STANDISH were caused to suffer personal injuries, violations of their civil rights, mental and emotional distress, and loss of liberty.

75. Plaintiffs EASHWAR ASHMID and BESHAM STANDISH demand judgment against the defendants in a sum to be determined by the jury at trial.

THIRD CLAIM
FAILURE TO INTERVENE

76. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

77. Throughout Plaintiffs' August 11, 2013 arrests by the Defendant POLICE OFFICERS, each of the individual Defendant POLICE OFFICERS had an affirmative duty to intervene on Plaintiffs' behalf to prevent the violation of their constitutional rights, including use of excessive force and/or false arrest.

78. Each of the individual Defendant Police Officers failed to intervene on Plaintiffs' behalf to prevent the violation of their constitutional rights despite having had realistic opportunities to do so.

79. Each of the individual Defendant Police Officers failed to intervene on Plaintiffs' behalf to prevent the violation of their constitutional rights despite having opportunity, knowledge, ability and obligation to intervene on behalf of each plaintiff.

80. As a result of the aforementioned conduct of each of the individual Defendant Police Officers, Plaintiffs' constitutional rights were violated.

81. As a result of the Defendants' constitutionally impermissible conduct, Plaintiffs EASHWAR ASHMID and BESHAM STANDISH were caused to suffer personal injuries, violations of their civil rights, mental and emotional distress, and loss of liberty.

82. Plaintiffs EASHWAR ASHMID and BESHAM STANDISH demand judgment against the defendants in a sum to be determined by the jury at trial.

## FOURTH CLAIM
## EXCESSIVE FORCE

83. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

84. On August 11, 2013, the Defendants DOUGLASS, BACHAL and John Doe Defendant Police Officers' used excessive force against Plaintiff EASHWAR ASHMID.

85. At no point did the circumstances presented to the Defendants DOUGLASS, BACHAL and John Doe Defendant Police Officers' support the above-mentioned applications of force on the Plaintiff.

86. Plaintiff EASHWAR ASHMID was subjected to excessive force in violation of his rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

87. As a result of the Defendants' violations, Plaintiff EASHWAR ASHMID was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

88. Plaintiff EASHWAR ASHMID demands judgment against the defendants in a sum to be determined by the jury at trial.

### FIFTH CLAIM
### DENIAL OF PLAINTIFF'S FAIR TRIAL RIGHTS

89. The Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

90. DEFENDANT DOUGLASS created false evidence against Plaintiffs ASHMID and STANDISH, creating or providing false evidence to prosecutors in the District Attorney's office.

91. In creating false evidence against Plaintiffs, and in forwarding false information to prosecutors, DEFENDANT DOUGLASS violated Plaintiffs' rights to fair trials under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

92. As a consequence thereof, Plaintiffs STANDISH and ASHWID have suffered harms compensable by damages, including deprivation of liberty.

### SIXTH CLAIM FOR RELIEF
### VIOLATIONS OF AND RETALIATION FOR THE
### EXERCISE OF RIGHTS TO FREE SPEECH

93. The Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

94. By the actions described above, defendants violated, and retaliated for the exercise of, the free speech and assembly rights of plaintiffs ASHMID AND STANDISH. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated their statutory and common law rights as guaranteed by the laws and Constitution of the United States.

95. Due to the exercise of free speech guaranteed by the First Amendment to the United States Constitution, Plaintiffs ASHMID and STANDISH were falsely arrested and caused to suffer a chill in their ability to communicate with police officers thereafter.

96. As a consequence thereof, Plaintiffs have suffered harms compensable by damages to be determined at a trial.

SEVENTH CLAIM
MONELL

97. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

98. Since 2002, the New York City Police Department ("NYPD") has engaged in an unlawful policy and practice of religious profiling and suspicionless surveillance of Muslim New Yorkers. This policy and practice has a false and unconstitutional premise: that Muslim religious belief and practices are a basis for law enforcement scrutiny.

99. As documented extensively in the NYPD's own records, its Intelligence Division has singled out Muslim religious and community leaders, mosques, organizations, businesses, and individuals for pervasive surveillance that is not visited

upon the public at large or upon institutions or individuals specifically belonging to any other religious faith. That surveillance has included the mapping of Muslim communities and their religious, educational, and social institutions and businesses in New York City (and beyond); deploying NYPD officers and informants to infiltrate mosques and monitor the conversations of congregants and religious leaders without any suspicion of wrongdoing; and conducting other forms of suspicionless surveillance of Muslim individuals, organizations, and institutions, including through the use of informants and monitoring of websites, blogs, and other online forums. Information collected from these activities has been entered into intelligence databases. According to the commanding officer of the NYPD's Intelligence Division, its mapping activities have not generated a single lead, nor led to a single terrorism investigation.

100.   The unlawful policy and practice that these activities reflect are referred to here as the NYPD's "Muslim Surveillance Program." Through the Muslim Surveillance Program, the NYPD has imposed an unwarranted badge of suspicion and stigma on law-abiding New Yorkers, including Plaintiffs in this action.

101.   As part of the Muslim Surveillance Program, the NYPD Intelligence Division investigated locations where cricket were played and observed.

102.   The NYPD Intelligence Division's unlawful surveillance, tracking, monitoring and reporting on the New York Muslim Community included investigating locations where cricket were played and observed.

103.   This policy and practice has a false and unconstitutional premise: that those interested in cricket, either as participants or fans, are Muslims and/or this particular sports interest is a basis for law enforcement scrutiny.

104. This unlawful surveillance, tracking, monitoring and reporting on the cricket playing and watching part of the New York Muslim community was summarized in a NYPD Intelligence report issued by its 'Demographics Unit' that was disclosed in an September 2013 entitled, Sports Venue Report.[1]

105. A lawsuit was filed by three New York Muslims, two mosques and a Muslim non-profit organization alleging that they were harmed by the NYPD's unlawful surveilling of the New York Muslim community. *See Raza v. City of New York*, 13CV3448 (PKC)(JMA).

106. In January 2016, a settlement of this lawsuit was announced that included important safeguards to ensure the NYPD's investigative practices are in line with the protections of the Constitution, including, a robust anti-religious-discrimination policy, safeguards to constrain intrusive investigatory practices, a limitation on the use of undercover officers and informants, and — critically — the appointment of an outside civilian representative to ensure all safeguards are followed and enforced.

107. On page 3 of the NYPD Intelligence Division Demographic Unit's Sports Venue Report, is a detailed map of the locations in the City of New York that were surveilled, identified and reported on as a location where members of the New York cricket community would gather to play or watch cricket.

---

[1] The front cover of the report states in bold capital letters, "The information contained in this document are secret. It is intended for official police use only. Note: No portion of this document can be copied or distributed without the exclusive permission of the police commissioner or deputy commissioner intelligence." No such permission was sought or received, however, this report is found on the internet, http://s3.documentcloud.org/documents/779743/demographics-sports-venues.pdf (available as of: 06/01/2016)

108. One location, Singh Sporting Goods, 100-06 101st Avenue, Queens, New York was identified on the map and on page 16 of the report with the following information:



Singh Sporting Goods: 100-06 101st Avenue
o Business: Sporting goods.
o Owner: Guyanese
o Information of Note: Owner is a direct importer and exporter of cricket equipments from India and Pakistan.
o Sports/Cricket Viewing location; Cricket Fan hangout.
o Other Ethnic Groups: Bangladeshis, Pakistanis and Indians.

109. The location of the arrest and assault of Plaintiff's Besham and Standish occurred approximately 929 feet, as the crow flies, from this location.

110. The assault of Plaintiff's occurred within a short distance of a location identified by the NYPD Intelligence Division's Demographic Unit as part of the unlawful tracking, monitoring and reporting on the New York Muslim and/or cricket playing and watching community.

111. Plaintiffs have each been to this store to purchase cricket sports items.

112. Pursuant to a policy and practice of targeting the New York Muslim community for unlawful surveillance and reporting, including by identifying cricket and cricket locations as appropriate factors for unlawful policing, the NYPD Intelligence Division led to the harm suffered by two cricket teammates and brothers, Plaintiffs' Besham and Standish.

113. As a result of Defendant CITY OF NEW YORK's violations, the plaintiffs were caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

114. Plaintiffs demand judgment against Defendant CITY OF NEW YORK in a sum to be determined by the jury at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Empanel a jury.

[d] Award attorney's fees and costs.

[e] Award such other and further relief as the Court deems to be in the interest of justice.

DATED: New York, New York
June 6, 2016

Respectfully submitted,

*/s/ Wylie Stecklow*
Wylie Stecklow
STECKLOW & THOMPSON
217 Centre Street, 6th Floor
New York, New York 10013
Phone (212) 566-8000
Fax (212) 202-4952
wylie@sctlaw.nyc
ATTORNEY FOR PLAINTIFFS